**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | 3:24-CR-50 |
| **CHAD DOWNTON** | : | **(JUDGE MANNION)** |
| **Defendant** | : | |

**MEMORANDUM**

Presently before the Court are Defendant Chad Downton's ("Downton") objections, (Doc. 50, at 1-3), to the final Presentence Investigation Report ("PSR"), (Doc. 49), prepared by the United States Probation Office. The objections have been fully briefed in the parties' sentencing memoranda. For the reasons set forth below, Downton's objection to Paragraph 29 will be **OVERRULED**. The Court will reserve ruling on objections to Paragraphs 41, 75 and 76 until the sentencing hearing.

**I. BACKGROUND**

Beginning on or about January 9, 2024, Federal Bureau of Investigation ("FBI") agents and task force officers conducted a proactive undercover internet operation targeting individuals who utilize the internet to sexually exploit children. Acting in an undercover capacity as an online

covert employee ("OCE") on an online platform named Doublelist,[1] an agent posed as "Bobby," the purported father of a 14-year-old female child name "Lindsay," discovered an online advertisement titled "Perv/tboo chat!" that stated, "I'm married and love perv/taboo chat. I'm open to pretty much anything. I'm clean std free and very discrete." The post identified the user as "37 years old, in Carbondale[, Pennsylvania]." The OCE responded to the advertisement and subsequently received an email from the Defendant.

What followed was an exchange of messages whereby the OCE asked the Defendant if he was interested in discussing taboo topics, and deceptively explained that he had a 14-year-old daughter whom he previously watched participate in sexual acts with adult males. At this point, the conversation switched to a text message-based platform, whereby the Defendant inquired about the fictitious 14-year-old female's sexual history and which days she and the OCE could be available to meet. The Defendant showed an interest in having sexual intercourse with the female and made statements including, "I'm good looking so she'll like me id imagine and I'm fixed so there's no worries about an oops." A brief

---

[1] Doublelist is a classified website and online platform that uses personal advertisements for people to make connections, particularly in the context of dating and sexual encounters.

conversation ensued regarding legitimacy and safety, and the Defendant stated, "But if it's legit I'm in! I love ynger [sic] girls!" and "I get that, I'm married so I'm taking a huge chance here too. I go to jail if caught."

As the conversation continued, the Defendant and the OCE discussed potential sexual acts involving the fictitious 14-year-old daughter. The Defendant requested a photograph of the child and upon receipt remarked, "Damn she's sexy!!!!" He went on to describe the sexual acts he proposed, sent images of his penis for her review, and discussed arranging a specific schedule for their sexual encounter.

On February 20, 2024, the OCE contacted the Defendant about scheduling the time and acts that would take place. Sexual talk regarding the child continued, when the Defendant informed the OCE that his wife was scheduled to leave the area for a week in May 2024—providing an opportunity for the child to spend the night with the Defendant during that time. During that conversation, the Defendant asked for "naughty pics" of the child, and was open and explicit about his intentions with her.

On February 26, 2024, the Defendant requested a telephone call from the OCE and his fictitious daughter so he could speak with the child. The child was portrayed by a task force officer and lasted approximately 11 minutes. During that conversation, an arrangement was made for the OCE

and the child to meet the Defendant on February 29, 2024, at a hotel, where the Defendant would perform sexual acts with the purported 14-year-old child. On that day, the Defendant arrived at the hotel where he was subsequently arrested and taken into custody.

During his post-*Mirandized* interview with law enforcement, the Defendant admitted to chatting with a man named "Bobby" and acknowledged that the chats focused on the Defendant having sex with "Bobby's" underage daughter. Further, he admitted to communicating on a previous occasion with another father about having sex with that father's child—conversations which he claimed were merely fantasy.

On February 29, 2024, a Criminal Complaint was filed in the Middle District of Pennsylvania, against Chad Downton, charging that from on or about January 9, 2024, to February 29, 2024, the Defendant attempted online enticement of a minor to engage in sexual activity in violation of 18 U.S.C. §2422(b) and attempted the transfer of obscene material to a minor in violation of 18 U.S.C. §1470. (Doc. 1). A week later, a Federal Grand Jury sitting in Scranton, Pennsylvania, returned a three-count Indictment against Downton, mirroring the charges in the complaint. (Doc. 17). On September 4, 2024, pursuant to a written plea agreement, the Defendant pled guilty to Count 1 of the Indictment charging attempted online

enticement of a minor in violation of 18 U.S.C. §2422(b). (Doc. 43). The Court accepted the plea and ordered a presentence investigation.

A draft PSR was issued to the parties on November 27, 2024. (Doc. 48). The final PSR was issued on May 27, 2025, to which Downton filed objections. (Doc. 50). Both parties filed their sentencing memoranda, and the matter is now ripe for this Court's review.

## II. DISCUSSION

The PSR determined that a five-level enhancement, among others, is applicable pursuant to U.S.S.G. §4B.1.5(b)(1) on the ground that the Defendant engaged in a "pattern of activity involving prohibited sexual conduct." *Id.* Defendant objects, asserting that the alleged conduct does not satisfy the Guidelines' definition of such a pattern. For the reasons discussed below, the Court overrules this objection.

The sentencing guidelines codified at U.S.S.G. §4B1.5(b)(1) impose a five-level enhancement when the defendant's instant offense of conviction is a "covered sex crime" and the defendant has engaged in a "pattern of activity involving prohibited sexual conduct." *Id.* To wit:

> (b) In any case in which the defendant's instant offense of conviction is a covered sex crime, neither §4B1.1 [Career Offender] nor subsection (a) of this guideline applies, and the

>defendant engaged in a pattern of activity involving prohibited sexual conduct:
>
>>(1) The offense level shall be 5 plus the offense level determined under Chapters 2 and Three….

*Id.* Here, Defendant's conduct falls squarely within the unambiguous plain meaning of §4B1.5(b)(1) for three reasons. First, the Defendant's instant offense of conviction—attempted online enticement of a minor under 18 U.S.C. §2422(b) via electronic means—is a "covered sex crime," which explicitly includes attempts and applies regardless of success.[2] Second, neither §4B1.1 (Career Offender) nor §4B1.5(a) applies, as he has no prior adjudicated sex-offense convictions.[3] Third, because Defendant solicited (via intermediary) sexually explicit images from a minor on multiple occasions, he clearly engaged in a "pattern of activity involving prohibited sexual conduct" under §4B1.5(b)(1).

Even if the plain meaning of §4B1.5(b)(1) were subject to any ambiguity, the associated commentary and the Sentencing Commission's

---

[2] Defendant concedes that his conviction does qualify as a "covered sex crime" for application of U.S.S.G. §4B1.5(b). (Doc. 58, at 3).
[3] Defendant did not "commit[ ] the instant offense of conviction subsequent to sustaining at least one sex conviction" according to §4B1.5(a).

amendment history provide clear guidance.[4] Specifically, Application Note 4(B)(i) provides that a "pattern of activity" exists if on at least two separate occasions the Defendant engaged in prohibited sexual conduct with a minor. Application Note 4(B)(ii) further clarifies that these occasions may (1) include the instant offense and at least one other prohibited act, (2) occur during the course of the instant offense, and (3) need not result in separate convictions. *See United States v. Osuba*, 67 F.4th 56, 66 (2d Cir. 2023) ("At least one of those acts 'can be the crime of conviction.'") (quoting *United States v. Broxmeyer*, 699 F.3d 265 (2d Cir. 2012)). This interpretation aligns with the Commission's intent to capture a defendant's broader pattern of sexual misconduct, not limited to adjudicated offenses.

A consensus among the circuits holds that these occasions must be independent and distinguishable, but not necessarily separated by substantial time, different victims, or unrelated incidents. For example, in *United States v. Fox*, 926 F.3d 1275 (11th Cir. 2019), the court refused the

---

[4] Courts must first exhaust traditional interpretive tools before concluding that a guideline text is genuinely ambiguous; if ambiguity remains, the commentary's interpretation must be "reasonable" within the outer bounds of the text, and it is entitled to controlling weight only if it reflects the Commission's official position, implicates its substantive expertise, and embodies fair, considered judgment. *United States v. Nasir*, 17 F.4th 459, 471 (3d Cir. 2021) (en banc).

defendant's argument that §4B1.5(b)(1) requires two unrelated incidents. *Id.* at 1280 ("The plain language of Application Note 4(B)(i) refutes Mr. Fox's assertion that multiple, unrelated occasions of prohibited sexual conduct are necessary to meet §4B1.5(b)(1).") Instead, the court interpreted "separate occasions" to mean discrete events with independent identities—even if they were related or close in time—and held that repeated exploitation of the same minor satisfies the enhancement. *Id.* ("The plain meaning of "separate occasions" does not require two events that are unrelated. It requires only events that are independent and distinguishable from each other. Multiple, distinct instances of abuse—whether ongoing, related, or random—meet the enhancement under §4B1.5(b)(1)."). The Eleventh Circuit reasoned that "separate" simply means "independent and distinguishable," rejecting any temporal or victim-based limitation. *Id.* To support its argument, the Eleventh Circuit reviewed the amendment history of §4B1.5(b)(1):

> Congress specifically contemplated that the five-level enhancement under §4B1.5(b)(1) should apply in circumstances where a minor victim is repeatedly abused by the same perpetrator on separate occasions. *See* H.R. Conf. Rep. No. 108-66, at 59 (2003). Interpreting §4B1.5(b)(1) as Mr. Fox describes would not apply the enhancement to circumstances

> where a minor is sexually abused more than once by the same person solely because each instance of ongoing abuse is considered "related" to the others. This interpretation comports with neither the plain meaning of the guideline commentary nor Congress's stated intentions in amending Application Note 4. For these reasons, we are not persuaded by Mr. Fox's second argument that unrelated instances of prohibited sexual abuse are required for an enhancement under §4B1.5(b)(1). Mr. Fox's ongoing, repeated abuse of G.P. therefore qualifies as the basis for the enhancement under §4B1.5(b)(1).

*Id.* at 1281. Similarly, the Fifth Circuit in *United States v. Sadeek*, 77 F.4th 320 (5th Cir. 2023), upheld application of the enhancement when the same minor was sexually assaulted on consecutive days. *Id.* at 327. The Fifth Circuit expressly rejected importing a requirement for a "substantial period of time" between incidents, noting that such language does not appear in §4B1.5 and should not be borrowed from unrelated provisions. *Id.* at 326. The Tenth Circuit in *United States v. Cifuentes-Lopez*, 40 F.4th 1215 (10th Cir. 2022), reinforced that multiple discrete acts even within the same period of conduct satisfy the guideline, and that cumulative application of enhancements is permissible. *See also, Broxmeyer,* 699 F.3d at 285 ("[W]e accord Guidelines language in the plain meaning: 'two' means two, not three; and 'separate' means the two occasions must be separate

from each other."). Lastly, in *United States v. Seibert*, 971 F.3d 396 (3d Cir. 2020), the Third Circuit, while addressing the permissible overlap of guideline enhancements, implicitly affirmed that pattern enhancements can rest upon repeat conduct within the instant offense, provided the acts are distinguishable events. *Id.* at 401 ("Not only did it apply each enhancement to distinct conduct, but the Guidelines allow for the simultaneous application of both enhancements even to the same conduct.").

In support of the enhancement, the Government cites to a compelling case in the Sixth Circuit,[5] *United States v. Paauwe*, 968 F. 3d 614 (6th Cir. 2020), whereby the circuit court was called upon to determine whether the lower court erred in applying the five level enhancement to the defendant's conduct, which included soliciting child sexual abuse material from the same victim on multiple occasions, qualified as a "pattern of activity involving prohibited sexual conduct." In so holding, the court noted:

> The essence of a "pattern of activity" is conduct that is both repeated and related. *See Pattern*, Merriam-Webster (Online ed. 2020) ("[T]he regular regular and repeated way in which something is done[.]"). True, as Paauwe notes, a pattern of activity could well encompass more than one victim. A robber might rob multiple banks over a course of time. But it could just

---

[5] (Doc. 56, at 12-13).

> as well involve multiple robberies of the same bank over time. The latter is just as much a pattern as the former. *See United States v. Wandahsega*, 924 F.3d 868, 886 (6th Cir. 2019) (finding that defendant's abuse of the same minor on two separate occasions constituted a "pattern of activity involving prohibited sexual conduct"). And there is no doubt Paauwe's pattern of activity involved "prohibited sexual conduct."
>
> ***
>
> All of this, moreover, accords with the instructions in Application Note 4(B)(i). That application note states that "the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." While we can fairly reach our conclusion today without reliance upon the application note, its consistency with the Guideline's text gives it controlling force.

*Paauwe*, 868 F.3d at 617; *see also United States v. Muldrew*, 2024 WL 3042687 (6th Cir. 2024) (holding Muldrew's conduct was "a pattern in the classic sense of the word, the continued use of a minor, a victim…over a period of time repeatedly in the same fashion").

The facts of this case align precisely with the above principles. The Defendant, under the belief that he was communicating with a father, sent

one message requesting "naughty pics" of the child. A separate line of communication followed requesting to meet the father and child. Each communication constitutes an independent, distinguishable request: first soliciting illicit images, second seeking personal contact. These messages occurred during the same course of online interactions but are clearly distinct in purpose and content. Under settled appellate precedent, including the Third Circuit's in *Seibert*, these constitute two separate occasions of prohibited sexual conduct even if part of the same series of exchanges and involving the same purported minor.

Therefore, the five-level sentencing enhancement under §4B1.5(b)(1) is squarely supported. The defendant's conviction under §2422(b) is a covered sex crime, and the two distinct solicitations satisfy the "two separate occasions" requirement. Temporal proximity does not defeat separability under the governing guideline or case law. And contrary to Defendant's argument in his Sentencing Memorandum,[6] attempts and conspiracies are explicitly included, and repeated communications—even in a single interaction—meet the threshold for a pattern of activity. *See United States v. Toney*, No. 20-1710 (8th Cir. 2020) ("inchoate offenses,

---

[6] (Doc. 58, at 6)

such as attempted production of child pornography, may be considered 'prohibited sexual conduct' for purposes of the enhancement.") (citing *United States v. Morgan*, 842 F.3d 1070, 1077 (8th Cir. 2016).

Reviewing the Defendant's Sentencing Memorandum, his chief concern appears to center on whether the conduct of asking the adult father—as a third-party intermediary—for the pictures of the minor can qualify as an "occasion" under §4B1.5(b)(1). He argues that such conduct requires the defendant to be in direct contact "with the minor or undercover officer directly posing as a minor," (Doc. 58, at 5-6), and asserts that the plain language of the statute "does not prohibit requesting an intermediary adult to go and ask a minor to engage in the requested act." (*Id.*, at 6). However, this argument is unavailing and the case of *United States v. Toney*, No. 20-1710 (8th Cir. 2020), is directly instructive on this point.

In *Toney*, the Eighth Circuit approved application of the §4B1.5(b)(1) enhancement where the defendant had pleaded guilty to an attempt to produce child pornography under 18 U.S.C. §2251(a), even though the defendant communicated only with the parents of minors rather than the minors themselves. *Id.* at *1-2. The sentencing court found—and Toney's counsel conceded—that the plea encompassed multiple communications requesting a minor be made available for illicit photography. *Id.* at * 3. The

district court treated one such communication as the occasion underlying the conviction, and a separate earlier communication as the second occasion. *Id.* On appeal, Toney asserted that only one instance of prohibited conduct occurred—that the enhancement improperly relied on conduct identical to the conviction offense. *Id.* The Eighth Circuit rejected the defense's argument, holding that the enhancement requires two discrete and distinguishable occasions, not necessarily distinct victims or widely spaced events. The first occasion is satisfied by the offense of conviction itself; the second may be drawn from other conduct addressed in the factual basis of the plea. The court observed that attempted production qualifies as "prohibited sexual conduct," and the enhancement applied even though both occasions occurred in the same general timeframe and resulted in only a single plea conviction.

Furthermore, the court recognized that the object of each attempt was to use a minor in the production of child pornography, and that contacting the adult caretaker with the aim of making the minor available constituted conduct "with a minor" for purposes of §4B1.5(b)(1). The court rejected the argument that intermediary-only contact precludes application of the enhancement, explaining that the enhancement may properly rely on the

entirety of the conduct, including its objective: producing a visual depiction of a minor engaged in sexually explicit conduct.

This Court agrees with the Eighth Circuit's reasoning and that the Defendant's conduct—requesting sexually explicit images from a purported adult father acting as a third-party intermediary for his fictitious minor daughter—constitutes an "occasion" under §4B1.5(b)(1).

### III. CONCLUSION

For the reasons set forth above, Downton's objection to Paragraph 29 is **OVERRULED**. The Court will reserve ruling on objections to Paragraphs 41, 75 and 76 until the sentencing hearing.

*s/ Malachy E. Mannion*
**Malachy E. Mannion**
**United States District Judge**

**Dated: August 5, 2025**
24-50-01